UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-

SCOTT DOUMAS,

                Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**ORDER**
13-CR-120 (JMA)

FILED
CLERK
6/16/2020 2:44 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Linda I. Marks
U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
    *Attorney for the United States*

Peter J. Tomao
600 Old Country Road
Suite 328
Garden City, NY 11530
    *Attorney for Defendant Scott Doumas*

**AZRACK, United States District Judge:**

Pending before the Court is the motion for compassionate release of defendant Scott Doumas ("Defendant"). (ECF No. 582.) For the reasons set forth below, the Court denies Defendant's motion.

## I. BACKGROUND

### A. Trial and Sentence

On November 5, 2015, a jury convicted Defendant of one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371, and one count of mail fraud, in violation of 18 U.S.C. § 1341, for his role in a scam involving vending machine business opportunities. (ECF No. 328.) This Court sentenced him to forty-eight months of imprisonment followed by three

years of supervised release. He and other co-conspirators were also ordered to pay restitution in the amount of $290,664.02 to twenty-five victims. (ECF No. 495.) The Second Circuit affirmed his conviction and sentence on appeal. (ECF No. 559.) Defendant began serving his sentence on July 14, 2019. (ECF No. 562.)

### B. The Instant Motion

Following the onset of the COVID-19 pandemic, Defendant emailed the warden of his facility, FMC Lexington, to seek compassionate release on March 31, 2020. (ECF No. 582-1 at 8.) The warden eventually responded to Defendant's request for compassionate release on May 28, 2020, stating that the "request was received and is being processed for further review." (ECF No. 584-1 at 1.)

On May 1, 2020, Defendant emailed the warden requesting to be released to home confinement for the remainder of his sentence. (ECF No. 584-3 at 1.) On May 13, 2020, the warden denied Defendant's request for home confinement, writing that "[o]ur assessment determined you do not meet the criteria for receiving further consideration under the Attorney General Barr's memo regarding Prioritization of Home Confinement." (ECF No. 582-1 at 12.)

On May 28, 2020, Defendant, represented by counsel, moved this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 582.) Defendant argues that because he suffers from poorly controlled diabetes, he faces a high risk of severe illness should he contract COVID-19 while incarcerated. (Id.) The government opposes his motion. (ECF No. 584.)

## II.  LEGAL STANDARD

### A. Standard of Review

Unless an exception applies, a "court may not modify a term of imprisonment once it has been imposed." United States v. Pinto-Thomaz, No. 18-CR-579, 2020 WL 1845875, at *2

(S.D.N.Y. Apr. 13, 2020) (quoting 18 U.S.C. § 3582(c)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute provides courts with discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Congress delegated responsibility to the Sentencing Commission to identify "the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." United States v. Simmons, No. 15-CR-445, 2020 WL 1847863, at *1 (S.D.N.Y. Apr. 13, 2020). Even after passage of the First Step Act, the Sentencing Commission's "descriptions of 'extraordinary and compelling reasons' remain current," and these standards "remain helpful as guidance to courts which hear these motions without the BOP as an intermediary." United States v. Lisi, No. 15-CR-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), reconsideration denied, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) (citations omitted).

The Sentencing Commission's policy statement provides a series of "extraordinary and compelling" reasons for a reduction in sentence. These include: the age of a defendant, if over sixty-five; a defendant's family circumstances; and when a defendant is "suffering from a serious

physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." United States v. Meli, No. 17-CR-127, 2020 WL 2114769, at *2 (S.D.N.Y. May 4, 2020) (quoting U.S.S.G. § 1B1.13(1)(A)).

Even if extraordinary and compelling reasons exist, the defendant must not be "a danger to the safety of any other person or to the community," and the reduction must be consistent with the Sentencing Commission's policy statement. U.S.S.G. § 1B1.13(2)–(3). In addition, a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020).

### III. DISCUSSION

#### A. Exhaustion

The parties do not dispute that Defendant exhausted his administrative remedies.

#### B. Extraordinary and Compelling Reasons for Release

Defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-CR-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020). In the absence of a terminal illness, the Sentencing Commission "would permit compassionate release because of a defendant's medical condition if he is 'suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected

to recover." United States v. Gioeli, No. 08-CR-240, 2020 WL 2472191, at *4 (E.D.N.Y. May 21, 2020) (quoting U.S.S.G. § 1B1.13 Application Note 1(A)).

The government concedes that Defendant's diabetes constitutes a serious physical or medical condition that diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. (ECF No. 584 at 13.) Though the Court is sympathetic to Defendant's diabetes and other health complications, especially given the conditions of his facility, it is by no means certain Defendant will contract COVID-19, particularly in light of: (1) the protective measures the BOP has taken to curb spread of the disease; (2) the falling number of confirmed COVID-19 cases at FMC Lexington; and (3) the fact that Defendant's current housing unit only has 96 inmates and no confirmed cases. See United States v. Weingarten, No. 08-CR-571, 2020 WL 2733965, at *3 (E.D.N.Y. May 26, 2020).[1] As the Third Circuit recently observed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Court acknowledges that Defendant's medical conditions place him at a heightened vulnerability for experiencing complications were he to contract the virus. Nonetheless, even if

---

[1] From June 11, 2020 to June 15, 2020, the number of inmates at FMC Lexington testing positive for COVID-19 fell from 77 to 26. See Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily calculations of confirmed infections) (accessed on June 11, 2020, at 2:00 p m. and June 15, 2020, at 10:00 a.m.). In addition, as of June 8, 2020, none of the 96 inmates in Defendant's unit have tested positive for the virus. (ECF No. 584-2 at 13 ¶ 30.)

The Court is aware, however, that the BOP's self-reported numbers "must be treated with great caution," particularly because they may fail to account for asymptomatic transmission. United States v. Rountree, No. 12-CR-0308, 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020). Accordingly, the Court echoes Judge Caproni's recognition that "[t]here is no question, however, that universal testing, apart from informing individual treatment decisions, would significantly aid efforts to detect and isolate infected individuals in order to reduce transmission in group settings." United States v. Rodriguez, No. 17-CR-157, 2020 WL 3051443, at *2–3 (S.D.N.Y. June 8, 2020).

the Court were to assume, <u>arguendo</u>, that Defendant's "medical conditions put him at higher risk than the average inmate" to the effects of COVID-19, the relevant sentencing factors do not support a reduction of his sentence, as explained below. United States v. Carter, 18-CR-390, 2020 WL 3051357, at *3 (S.D.N.Y. June 8, 2020).

### C. Consideration of Section 3553(a) Factors

The Section 3553(a) sentencing factors weigh against granting compassionate release.[2] At sentencing, Defendant was ordered to pay over $290,000 in restitution to twenty-five fraud victims. Granting his motion would mean that Defendant would serve under 25% of his original sentence and less than one year of incarceration. Compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct—including other defendants who worked at Vendstar. A reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for

---

[2] These factors are:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) [the kinds of sentences and sentencing range provided for in the USSG]
    (5) any pertinent [Sentencing Commission policy statement]
    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

criminal conduct. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.[3]

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED. This application is denied without prejudice to its renewal should Defendant's condition or the situation at his facility materially worsen.

**SO ORDERED.**

Dated: June 16, 2020
       Central Islip, New York

                                                       /s/ (JMA)
                                                      JOAN M. AZRACK
                                                      UNITED STATES DISTRICT JUDGE

---

[3] In his letter to the Court attached to the instant motion, Defendant requests that the Court grant him compassionate release "or a transfer to home confinement." (ECF No. 582-1 at 6.) The Court has considered whether to recommend to the BOP that Defendant serve his sentence under home confinement until the risks from the COVID-19 pandemic have decreased. See United States v. Stahl, No. 18-CR-694, 2020 WL 1819986, at *1–2 (S.D.N.Y. Apr. 10, 2020) (making a recommendation for temporary release to home detention but recognizing that such a decision "is committed to sole discretion of the BOP.") The Court, however, finds that such a recommendation is inappropriate at this time. As explained earlier, the situation at FMC Lexington appears to be improving. If the situation at Defendant's facility were to substantially worsen, Defendant is free to renew his request to the Court for such recommendation.